## CIMIOTTI UNHAIRING CO. et al. v. BOWSKY.

(Circuit Court, S. D. New York. June 13, 1899.)

1. PATENTS—INFRINGEMENT—IMPERFECT OPERATION.

When the essential features of the patented device are appropriated, infringement is not avoided by the fact that defendant's device works imperfectly, or is not so practical as that of the patent.

2. SAME—MACHINES FOR REMOVING HAIRS FROM FUR SKINS.

The Sutton patent, No. 383,258, for a machine for removing hairs from fur skins, construed, and *held* valid as to claim 8, covering a combination of which the essential feature is a removable revolving brush to brush down the fur and leave the hairs standing so as to be clipped off by the cutters; and said claim *held* infringed by the device of the Jenik patent, No. 557,129.

3. SAME.

The Hedbavny reissue, No. 11,079 (original No. 408,879), for a machine for removing hairs from fur skins, is void, as to claims 1 and 2, for want of invention. Claim 3, if valid at all, must be limited to the precise construction shown; and neither it nor claim 4 is infringed by the device of the Jenik patent, No. 557,129.

This was a suit in equity by the Cimiotti Unhairing Company and John W. Sutton against Max Bowsky for alleged infringement of certain patents relating to machines for removing the hairs from fur skins.

Louis C. Raegener, for complainants.
Robert Valentine Mathews, for defendant.

TOWNSEND, District Judge. Final hearing on bill and answer raising question of infringement of the eighth claim of complainants' patent, No. 383,258, granted May 22, 1888, to John W. Sutton, and of the four claims of the reissued patent, No. 11,079, reissued May 27, 1890, to Anton Hedbavny; both being for machines for removing hairs from fur skins. These machines are more particularly adapted for the treatment of seal skins, and of so treating the skins of coneys that in their completed state they resemble the genuine seal, being then known as "electric seal." The skins of such animals are covered with fur and coarse, stiff hair. To make the pelt merchantable, it must be dyed and unhaired. Prior to 1879 this unhairing was done by hand. The skins were either drawn over a crossbar by hand, or were stretched by the operator over his finger; and he then blew down the fur so as to separate it from the hairs, which were cut off or plucked out. Patent No. 213,735, granted to Castle in 1879, covered a machine for cutting off the coarse hairs, so as to be level with the fur, by means of a revolving comb and cutter. In 1881 the Cimiotti brothers obtained patent No. 240,007, for a machine for clipping the hairs in such skins. It comprised a knife-edged horizontal bar, over which the skin was tightly stretched and revolved by

means of rollers, a blower which forced a blast of air vertically down on to the portion of fur stretched on the knife edge, moving guard combs which retained the skin in place, and horizontally moving knives for clipping off the stiff hairs which projected through said combs. The invention of the Sutton patent in suit dispensed with the blower device, and comprised, inter alia, a movable and revolving brush, which moved forward and brushed down the fur, leaving the hair standing, and then retreated while the knives cut off the hair. An examination of the prior art abundantly confirms the admissions of defendant's expert that Sutton's machine was "probably the first wherein a movable rotary brush was used for * * * brushing away from the edge of the stretcher bar the fur," and was "an innovation in itself, * * * and an entirely new departure." It was a new, a useful, and a meritorious invention. The eighth claim is as follows:

"The combination of a fixed stretcher bar, means for intermittently feeding the skin over the same, a stationary card above the stretcher bar, a rotary separating brush below the same, and mechanism, substantially as described, whereby the rotary brush is moved upward and forward into a position in front of the stretcher bar, substantially as set forth."

The defendant contends either that this claim does not cover a valid combination, because it omits therefrom a certain carding brush, D2, essential to the operation of the machine, or that, if it is not essential, the patent is misleading, and the patentee has perpetrated a fraud. He further contends that a harder brush must be used when D2 is dispensed with, while the specification describes a brush made of soft bristles. The following are sufficient answers to these contentions: Neither complainants nor defendant use the carding brush, D2, in their machines. Therefore it is not essential. The patent is not misleading. The eighth claim covers this specific construction without D2. In these circumstances, invalidity is not shown by a mere difference in the degree of hardness of the bristles. It appears from an examination of patent No. 304,992, to Covert, that this carding brush, D2, is substantially the brush, G, of the Covert patent; that its functions are merely subsidiary, as explained on page 1, lines 93 to 100, and page 2, lines 1 to 5, of said Covert patent; and that it does not hold down the fur and hair away from the knife, but pulls out a section thereof, to be afterwards submitted to the action of the rotary separating brush. The description of such nonessentials in the specification merely amounts to a statement of the better method of using the combination. City of Boston v. Allen, 33 C. C. A. 485, 91 Fed. 248. But the movable rotary brush of the patent in suit, which is on the opposite side of the guard, moves in a direction opposite to the motion of D2; and, as defendant's expert says:

"It brushes the fur [and hair] downwardly, * * * is then gradually receded along the lower part or lower surface of the stretcher bar, * * *" and "releases the water hairs. * * * Then the movable guard is advanced, following the motion of the brush, and holds the fur down while the knife cuts off the projecting water hair."

Infringement is further sufficiently proved by the admission of defendant's expert that defendant's machine has the exact combination

of the eighth claim, except that its "movable rotary brush is moved forward and backward along the lower surface of the stretcher bar," while in complainants' eighth claim "the rotary brush is moved upward and forward into a position in front of the stretcher bar." This is a mere difference of arrangement, and does not avoid the patent.

Defendant's counsel further contends that defendant's machine, claimed to be made in accordance with the specifications of patent No. 557,129, granted to Jenik in 1896, does not infringe, because it uses a segmental rotary brush, which is only movable far enough to get out of the way of a singeing device, to be hereafter discussed. But the Jenik patent describes a rotary brush, which "passed over and brushed away the fur from the edge of the bar, P, and the gap following it allows the stiff hairs to rise," just as in complainants' patent his brush was so revolved "as to separate the fur from the hairs, brushing down the former, leaving the stiff hair standing out." And defendant admits that while his machine, as originally constructed, with a stationary brush, was inoperative, he afterwards changed it so that the brush moved up and down behind the stretcher bar. It is not admitted, but it is evident, that the brush was made movable in order to escape the singeing bar. If the limited range of movement of defendant's brush is only sufficient to secure a part of the advantages derived from complainants' invention, this is no defense. The movable rotary brush is the essential element of complainants' invention covered by the eighth claim, and complainants are entitled to all the beneficial uses of such invention; and it is immaterial that the infringing device works poorly, or is not so practicable as the one infringed. These minor details of construction and additional functions claimed for defendant's machine do not show such substantial differences as affect the essential identity of the two machines, so far as the operation of the movable brush and its results are concerned. It is unnecessary to hold, as claimed by complainants, and almost admitted by defendant's expert, that complainants' is a pioneer invention. The proof and admissions of substantial identity are so clear that, upon either view of this meritorious patent, it is infringed.

The original Hedbavny patent, No. 408,879, issued August 13, 1889, covered an unhairing machine with an oscillating incandescent conductor, instead of a knife or shear device. In 1890 he surrendered this patent because it was inoperative or invalid for the reason that its specification failed to describe the oscillating movement of the rotary brush, essential to the operation of the machine, and failed to clearly and intelligently describe the incandescent conductor, "the essential and important feature of the deponent's invention"; and he applied for a reissue, filing certain proposed amendments and drawings to show how the machine could be made operative. The application was rejected as covering new matter. The applicant acquiesced, and canceled a portion of the proposed amendments and said drawings. He took out his reissue, with additional and broader claims, and inserted said new matter and said canceled drawings in a new application, and in 1893 received patent No. 502,359 therefor. The testimony of defendant's expert that the Hedbavny reissue cov-

ers an inoperative device is not denied. "The only difference of consequence between the original patent, No. 130,770, and the reissue, No. 9,743, is in the claims; the text of the two specifications being almost substantially the same, and the drawings differing only as to scale. * * * The claims of the reissue must be held to be limited to the specific mechanism claimed in the original patent." Electric Gas-Lighting Co. v. Boston Electric Co., 139 U. S. 481, 11 Sup. Ct. 586; Sutter v. Robinson, 119 U. S. 530, 7 Sup. Ct. 376; Matthews v. Manufacturing Co., 124 U. S. 347, 8 Sup. Ct. 639.

Claims 1 and 2 of the reissue cover broadly any metallic conductor heated to incandescence by electricity and any means to bring it in contact with water hairs, in a machine for unhairing pelts. Claim 4 limits the element in the third claim to a guard comb having a serrated edge. Defendant's device does not infringe the fourth claim, and the first and second claims are so broad that they cannot be supported. The third claim of the reissue, which is the same as the second claim of the original patent, is as follows:

"The combination of a transverse, knife-edged bar, means for intermittently feeding the pelt over said knife-edged bar, a guard comb at one side of the knife-edged bar, a rotary brush at the opposite side of the same, and an intermittently oscillating incandescent conductor located above the knife-edged bar, so as to burn off the projecting water hairs when it is brought in contact therewith, substantially as set forth."

If this claim can be sustained as for an operative device, it must be limited to the precise construction shown and claimed. The use of red-hot irons in unhairing skins was old. The prior English patent to Banks described and showed an incandescent wire for singeing off nap from woolen cloths. The prior patent to Rasmus, No. 275,077, described oscillating levers for intermittently operating guard and comb similar to those described by Hedbavny for his intermittently operating conductor. The novel feature of the Hedbavny machine is the means for moving the wire to and from the edge of the stretcher bar. Upon the question whether this means involved invention, and whether it is infringed, the expert testimony and briefs are not satisfactory. Complainants' expert merely says that in Hedbavny "suitable mechanism is arranged * * * to give a motion to the incandescing conductor, * * * which shall carry it to and from the angle of the pelt," etc., and that defendant's arrangement in general is the same, except that "instead of an incandescing conductor which moves directly towards the edge of the stretcher bar by an up and down motion, as in the Hedbavny patent, one is employed which is so mounted upon oscillating arms as to cause the same to move with what I should term a sweeping action across the water hairs," etc., and that "there is no material difference, as far as the purport, intent, or object of the two machines are concerned." Assuming that the claim for means to bring said conductor in contact with water hairs means "suitable, and not necessarily certain, mechanism for moving," etc., defendant's expert and counsel contend that said mechanism in defendant's machine "is not only composed of entirely different elements, but its whole construction and mode of operation is based upon a different principle, and for a different purpose." The

construction of these means is nowhere described. The question of their identity is therefore not clear. The presumption of patentable difference as to the details of construction raised by the grant of the later Jenik patent has not been overcome.

A decree may be entered for an injunction and accounting as to claim 8 of patent No. 383,258. As to reissue No. 11,079, the bill may be dismissed. The complainants to recover one-half of their costs.