CIMIOTTI UNHAIRING CO. et al. v. COMSTOCK UNHAIRING CO. et al.

(Circuit Court, S. D. New York. April 10, 1902.)

1. PATENTS—ANTICIPATING PATENT—OBSCURITY OF LANGUAGE.
    A patent so obscure in its terminology that two conflicting theories as to its meaning may be deduced therefrom and supported by equally plausible arguments is too indefinite to be utilized as an anticipation.
2. SAME—INFRINGEMENT—UNHAIRING MACHINE.
    The Sutton patent, No. 383,258, for a machine for removing the hairs from fur skins, was not anticipated by the Lake English patent, and is valid. Also *held* infringed.

In Equity. Suit for infringement of letters patent No. 383,258, issued to John W. Sutton, May 22, 1888, for a machine for removing the hairs from fur skins. On final hearing.

Louis C. Raegener, for complainants.
Marcellus Bailey, for defendants.

COXE, District Judge. The circuit court of appeals has passed upon every issue presented by this record upon facts which differ in no essential particular. An extended discussion of the questions debated at bar is therefore unnecessary.

The only new evidence is the French patent to Lambert & Kokesch, the patent to Lake being the English patent for the same machine. It is conceded that the drawings of the two patents are identical and the description substantially similar. The differences are due mainly to the translation from the one language to the other; they are insignificant and indeterminate and fail to add anything of importance to the controversy. If the English patent does not constitute a defense to the Sutton patent it is manifest that the French patent does not do so. The two will hereafter be referred to as the Lake patent.

It is now argued for the first time in the history of the litigation over the Sutton patent that the Lake patent is a complete anticipation; that the experts for complainants and defendants have heretofore misunderstood the patent and that now for the first time ambiguities which in the past have puzzled witnesses and counsel are made clear. That the patent has not been understood in the past will probably be conceded on both sides. Whether all doubt is now removed is a question upon which there are still two opinions.

Indeed, the new theory as to the path of travel of the stretcher-bar in a curve "concave to the roll" injects an additional complication into the controversy and renders uncertain propositions upon which the experts up to this time were agreed. It is enough that it is impossible to formulate any definite explanation of the working of the Lake machine. A document so obscure in its terminology that two conflicting theories may be deduced therefrom and supported by equally plausible arguments is too indefinite to be utilized as an anticipation. Tilghman v. Proctor, 102 U. S. 707, 26 L. Ed. 279; Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658; Cohn v. Corset Co., 93 U. S. 366, 370, 23 L. Ed. 907; Brill v. Railroad Co. (C. C.) 103 Fed. 289.

It is admitted that the machine as illustrated in the drawings will not operate as the expert for defendants insists it is intended to operate, but it is argued that a mechanic reading the specification would, in 1881, have been able to construct an operative machine. One answer, and a sufficient one, to this contention is that the inventors themselves, with plenty of money at their disposal and every incentive to make the machine work, were unable to do so. If the inventors could not succeed it is safe to assume that a mere mechanic would fail also.

The fact that Mr. Shaw, a lawyer, was unable to describe the details of the machine is immaterial. He and his associate had invested over $2,000 in an effort to exploit the Lake machine. The work was done under the personal supervision of Mr. Lambert, one of the inventors, every opportunity was given to make the enterprise a success, but it proved a disastrous failure. The suggestion that this may have been some other machine than that of the Lake patent because a lawyer who saw it 20 years ago is unable to describe it in detail seems to require too extended an excursion into the domain of conjecture. The presumption is conclusive that Lambert & Kokesch were trying to make the Lambert & Kokesch machine operate and not some other machine. It is also manifest, if the machine they described in the Lake specification was capable of doing the work, that they would not have spent $2,000 in constructing a machine which, after all their labor upon it, was incapable of doing the work. If the change necessary to make the Lake machine operate successfully was so simple and obvious those men certainly would have known enough to make it.

The defendants' machine contains each element of the combination of the eighth claim of the patent in suit, or a well-known equivalent therefor. It has the stretcher-bar and means for stretching and intermittently feeding the skin over the stretcher-bar. This is admitted. It has an equivalent for the third element of the claim, namely, "a fixed card above the stretcher-bar." This proposition if not admitted is, certainly, not seriously disputed. Indeed, in defendants' brief "a stationary card" and "a pressure plate or guard device" are spoken of as synonymous terms and are treated as well-recognized equivalents.

That the defendants have appropriated the last two elements of the eighth claim was, in effect, decided by the circuit court of appeals in American Unhairing Mach. Co. Case, 115 Fed. 498. In the defendants' machine the rotary brush is stationary, and the stretcher-bar moves back and forth from the brush to the cutters. This is precisely the action of the machine held to infringe in the case referred to. In short, every question mooted regarding infringement has already been passed upon adversely to the defendants by the decisions of the circuit court of appeals.

The complainants are entitled to the usual decree.